UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| YVONDIA JOHNSON, § | | |
| *Plaintiff* § | | |
| § | | |
| v. § | | |
| § | | **Case No. 1:21-CV-00831-ADA-SH** |
| SECRETARY CHRISTINE § | | |
| WORMUTH, DEPARTMENT OF § | | |
| THE ARMY, § | | |
| *Defendant* § | | |

**ORDER AND REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff's Opposed Motion to Transfer Venue, filed October 2, 2023 (Dkt. 47); Defendant's Motion for Summary Judgment, filed January 19, 2024 (Dkt. 51); the associated response and reply briefs; and Plaintiff's Unopposed Motion for a Continuance, filed March 28, 2024 (Dkt. 57). On February 5, 2024, the District Court referred to this Magistrate Judge all non-dispositive pretrial matters for disposition and all case-dispositive motions for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 53.

**I.   Background**

Plaintiff Yvondia D. Johnson brings this disability discrimination lawsuit under Section 501 the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, against Defendant Christine Wormuth in her official capacity as Secretary of the Department of the Army.

1

Johnson is a veteran of the United States Air Force who was honorably discharged from active duty service on February 18, 1991. Dkt. 51-1 at 2. Johnson alleges that she suffers from several disabilities, including diabetes, high blood pressure, breast cancer treatment, and a heart condition she alleges is related to her service in the Air Force. Complaint, Dkt. 1 ¶ 22. On March 1, 1991, Johnson applied for service-connected disability compensation with the Department of Veterans Affairs. Dkt. 51-2 at 2. On October 31, 1991, the VA granted her disability claim in part and awarded her a "combined evaluation" of 30% service-connected disability compensation for two conditions: (1) "status post back strain" (20%), and (2) "status post arthroscopic removal of torn cartilage in the left knee" (10%). *Id.* The VA denied her claim for her claimed disabilities of essential hypertension, glucose intolerance, increased cholesterol, decreased high density, and lipoprotein. *Id.*

On April 17, 2001, Johnson submitted another disability claim to the VA based on her hypertension and diabetes mellitus. Dkt. 51-3 at 2. The VA awarded Johnson an additional 10% disability rating for her hypertension, bringing her overall combined VA disability rating to 40%. *Id.* at 3. The VA deferred her claim related to diabetes mellitus because it needed additional medical records to issue a decision. *Id.*

After Johnson was discharged from military service, she began working for the Air Force as a Civilian Contract Specialist, pay grade GS-9, at Kelly Air Force Base in San Antonio, Texas. Dkt. 54-10 at 5. She was promoted to a higher pay grade (GS-11) in June 1996 and continued to work at Kelly Air Force Base until July 2000. *Id.* at 4. From July 2001 through April 2007, Johnson was employed as a high school teacher for the Judson Independent School District in Converse, Texas. *Id.* From April 2007 through April 2008, she returned to work as a Contract Specialist, this time at Fort Sam Houston Army Base in San Antonio. *Id.* at 3. From 2007 through 2012, Johnson

2

served in various contracting roles for the Army and Defense Contract Management Agency at pay grade GS-12. *Id.* at 2-3. From July 2012 through March 2014, she worked as an Administrative Contracting Officer with the Air Force at Incirlik Air Base in Turkey. *Id.* at 1. From April 2014 through 2015, Johnson worked as a Supervisory Contract Specialist (GS-12) for the Air Force at Royal Air Force Lakenheath, England. *Id.*

On February 1, 2015, Johnson applied for a Contract Management Specialist ("CMS") position with the Army Installation Management Command (IMCOM) at Fort Sam Houston Army Base at pay grade GS-13. Dkt. 54 at 7. Along with her resume, college transcripts, and award certificates, Johnson's application included a September 20, 2013 AB4 Civil Service Preference Letter from the VA certifying that she "separated under honorable conditions from active military duty service" and is "entitled to compensation for service-connected disability(ies) which are at least 30 percent or more disabling." Dkt. 54-10 at 18. Johnson alleges that she was "highly qualified" for the position and "able to perform all the essential functions of the Contract Management Specialist position." Dkt. 54 at 7.

Jacob Hansen, the Chief of the Acquisition and Sorting Division at IMCOM, reviewed 17 applications, including Johnson's. Hansen chose three candidates to interview and ultimately hired Command Sergeant Major (Ret.) Douglas Adams for the position. Dkt. 51 at 5. Hansen did not interview Johnson.

On April 20, 2015, IMCOM sent Johnson a letter ("Disposition Letter") notifying her that another candidate was selected for the CMS position. Dkt. 54-1 at 1. The Disposition Letter also states:

> During an audit of your application, the selecting office found that you are not eligible for this position based on medical reasons.
>
> Therefore, you were removed from the certificate, or list, of highly qualified candidates.

3

*Id.* After Johnson received the Disposition Letter, she filed a formal disability discrimination complaint with the Army's Equal Employment Opportunity Compliance and Complaints Office ("EEO"). Dkt. 54-15 at 1-5.

The Army contends the Disposition Letter was sent mistakenly due to a clerical error and denies that Johnson was eliminated from consideration due to medical reasons. Hansen explains:

> Ms. Johnson received the letter stating she was not considered for the position due to medical reasons in error. A mistake was made in the dropdown menu of the Selection Manager software application. This was a clerical error. Ms. Johnson's resume was reviewed and scored. She did not score high enough to make the interview phase of the hiring process.

Declaration of Jacob Hansen, Dkt. 51-12 at 3. Hansen testified at deposition that "there was a glitch" in the software program that automatically selected the "nonselect for medical reasons" box instead of the "nonselect" box he intended to check. Hansen Tr. at 103:18-104:6, Dkt. 51-9 at 19-20. The Army contends that Johnson was not selected for the CMS position because she was not the most qualified candidate. Dkt. 51 at 1. The Army also contends that Hansen did not know about Johnson's VA rating or her underlying medical conditions when he selected another candidate. *Id.* On June 21, 2021, the EEO Office issued its final decision determining that Johnson had not been discriminated against because of a disability. Dkt. 1-1 at 2.

Johnson sued the Army on September 19, 2021, asserting one claim of disability discrimination under Section 501 of the Rehabilitation Act. She alleges that the Army discriminatorily chose not to select her for the CMS position because of her disabilities. Dkt. 54 at 4. She seeks injunctive and declaratory relief, monetary damages, and attorneys' fees and costs.

On January 28, 2022, the Army moved to dismiss for improper service under Rules 4(m) and 12(b)(5). Dkt. 9. This Magistrate Judge issued a Report and Recommendation that the District

4

Court deny the motion to dismiss and permit Johnson to cure her failure to serve under Rule 4(i). Dkt. 21. The District Court adopted the Report and Recommendation in full. Dkt. 22.

On July 21, 2023, the District Court issued an Amended Scheduling Order setting jury trial to commence June 24, 2024. Dkt. 44 at 3. The Court also ordered that discovery would close on December 15, 2023. *Id.* at 1.

In her Motion to Transfer Venue under 28 U.S.C. § 1404(a), Johnson asks the Court to transfer this case to the San Antonio Division of the Western District of Texas. Dkt. 47. The Army opposes the motion and moves for summary judgment under Rule 56(a), arguing that Johnson fails to state a claim of disability discrimination. Dkt. 51. Johnson argues in response that disputed issues of material fact preclude summary judgment.

## II. Motion to Transfer Venue

Two years after she filed this case in this Division, Johnson contends that the San Antonio Division "is the more proper and desired forum by Plaintiff because the events and/or omissions giving rise to this litigation took place at Fort Sam Houston and the Plaintiff resides in San Antonio." Dkt. 47 at 1. The Army argues that the Court should deny the Motion to Transfer Venue because Johnson unreasonably waited more than two years to request it. Alternatively, the Army argues that Johnson has not shown good cause for the transfer under 28 U.S.C. § 1404(a).

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The decision whether to transfer a case is committed to the district court's discretion. *Volkswagen II*, 545 F.3d at 311.

5

> A party seeking a transfer under Section 1404(a) must show good cause by clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice. When the transferee venue is not clearly more convenient than the venue chosen by the Plaintiff, the Plaintiff's choice should be respected. . . . Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. In other words, the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.

*Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (cleaned up). To establish good cause, a movant must show "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024).

The transfer analysis proceeds in two parts. First, the court must ask whether the case "might have been brought" in the destination venue. 28 U.S.C. § 1404(a). If the answer is yes, then the court must determine whether the moving party has shown good cause for transferring the case. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To determine whether the moving party has shown good cause, the court looks to a series of private and public factors.

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* (citations omitted). These factors are neither exhaustive nor exclusive, and none is dispositive. *Id.* "Where there is no demonstration by the movant, let alone a clear one, the [district] court cannot weigh a factor against the non-movant and in favor of transfer." *Def. Distributed*, 30 F.4th at 434.

Although defendants typically seek to transfer venue, plaintiffs also may move to transfer under § 1404(a). *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990); *In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) ("*Volkswagen I*"). "The burden should be at least as heavy on a plaintiff who seeks to change the forum originally chosen as it is when the defendant moves to transfer." 15 RICHARD D. FREER, FEDERAL PRACTICE AND PROCEDURE (WRIGHT & MILLER) § 3848 (4th ed. April 2023 Update). Some courts require a plaintiff to show that circumstances have changed since the lawsuit was filed to transfer the case. *Doe v. Salesforce, Inc.*, No. 3:23-CV-0915-B, 2023 WL 5439226, at *2 (N.D. Tex. Aug. 23, 2023).

While § 1404(a) sets no time limit for bringing a motion to transfer venue, the Fifth Circuit has stated that parties seeking a change of venue should act with "'reasonable promptness.'" *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (citation omitted). Courts consider a party's delay in seeking transfer in determining whether to transfer a case under § 1404(a) so that "crafty litigants can't ambush their opponents with a tactical Section 1404(a) transfer motion on the eve of trial." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 760 (E.D. Tex. 2000).

The parties agree this action might have been brought in the San Antonio Division of the Western District of Texas. Accordingly, the Court addresses the private interest factors.

**B. Private Interest Factors**

   **1. Relative Ease of Access to Sources of Proof**

The first private interest factor focuses on the location of "documents and physical evidence" relating to the case. *Volkswagen II*, 545 F.3d at 316. "The location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). Johnson identifies no documents or physical evidence she lacks to litigate this case. As stated, the parties have completed discovery and submitted many documents and deposition transcripts in support of their summary

judgment briefs. The Army emphasizes that the parties had no venue-based issues accessing sources of proof during the discovery period. This factor is neutral.

## 2. Availability of Compulsory Process

Under the second private interest factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may require a court order. *Volkswagen II*, 545 F.3d at 316. District courts have the authority to compel non-party witnesses "to attend a trial, hearing, or deposition" conducted "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A). Johnson identifies no witness who is unwilling to testify for which compulsory process is unavailable in the Austin Division. This factor does not favor transfer.

## 3. Costs of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen II*, 545 F.3d at 317. All potential material and relevant witnesses must be considered. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765 (E.D. Tex. 2009). Johnson argues that litigating this case in San Antonio would be less expensive because all willing witnesses are located there. The Court agrees. This factor favors transfer.

## 4. All Other Practical Problems

The fourth private interest factor is "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315. Because of the advanced stage of this case, "considerations of judicial economy, including the ease, expense, and timeliness of trial weigh heavier and are less speculative" than in cases in their infancy. *Wsou Invs. LLC v. Microsoft Corp.*, No. W-20-CV-00454-ADA, 2022 WL 2078216, at *11 (W.D. Tex. June 9, 2022).

Courts consider a party's delay in seeking transfer in determining whether to transfer a case under § 1404(a). *Peteet*, 868 F.2d at 1436. "If a litigant resisting transfer successfully shows the Section 1404(a) transfer motion is a dilatory tactic, or that it would be prejudiced solely because of the delay in bringing the motion, then the litigant moving for transfer has failed to show 'reasonable promptness' in bringing his transfer motion." *Mohamed*, 90 F. Supp. 2d at 760.

The Court finds that Johnson did not act with "reasonable promptness" by waiting more than two years to move to transfer venue. *See Planned Parenthood*, 52 F.4th at 630-31 (affirming denial of motion to transfer venue where petitioner waited seven months to file motion, finding that the district court was within its discretion to conclude that the petitioners' failure to seek relief until late in the litigation weighed against transfer); *Peteet*, 868 F.2d at 1436 (affirming denial of motion to transfer after 18-month delay); *Nitride Semiconductors Co. v. Lite-On Tech. Corp.*, No. W-21-CV-00183-ADA-DTG, 2022 WL 4111885, at *1 (W.D. Tex. Sept. 8, 2022) (denying motion for leave to file motion for intra-district transfer when defendants waited a year to seek transfer, finding that motion would cause unnecessary delay).

Transferring the case now will cause unnecessary delay and prejudice Defendant. Discovery has closed, Defendant's motion for summary judgment is pending, and trial is set in less than three months. Transfer would vacate the trial setting and delay resolving Defendant's motion for summary judgment. *See Wsou Invs.*, 2022 WL 2078216, at *12 ("It is absurd to think that transfer at this stage of the case will result in nothing more than 'garden variety' delay."); *IBEW-NECA Sw. Health & Ben. Fund v. Duvall Elec., LLC*, No. 3:10-CV-1079-B, 2011 WL 711005, at *4 (N.D. Tex. Feb. 28, 2011) (declining to transfer case at late stage of litigation). Johnson identifies no changed circumstances compelling transfer at this late date. *Doe*, 2023 WL 5439226, at *2.

"The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient." *Volkswagen II*, 545 F.3d at 313. Because Johnson chose to file this action in the Austin Division and the Defendant does not object, there is no such concern. This factor weighs against transfer.

**C. Public Interest Factors**

### 1. Administrative Difficulties Flowing from Court Congestion

The first public interest factor is "the speed with which a case can come to trial and be resolved." *Wsou Invs.*, 2022 WL 2078216, at *12 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)). Court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.* But as a case advances towards its trial date, such speculation is reduced and this factor's weight increases proportionally. *Id.*

Trial is set to commence in June 2024. Transferring this case to the San Antonio Division would delay that trial date. In contrast, maintaining this forum allows the case to proceed toward its scheduled trial. Trial will occur in this forum faster than the proposed transferee forum. The first public interest factor weighs against transfer.

### 2. Local Interest in Having Localized Interests Decided at Home

The local interest inquiry is concerned with the interest of non-party citizens in adjudicating the case. *In Re Clarke*, 94 F.4th at 511. "To identify localized interests properly, '[courts] look not to the parties' significant connections to each forum but rather the significant connections between a particular venue and the events that gave rise to a suit.'" *Id.* (quoting *In re TikTok, Inc.*, 85 F.4th 352, 364 (5th Cir. 2023)). Because there is no dispute that all the events giving rise to this suit occurred in the San Antonio Division, this factor favors transfer.

### 3. Other Factors

The third and fourth public interest factors are neutral.

### D. Conclusion

After weighing all factors, the Court finds that Johnson has failed to show good cause for the transfer. Because discovery has closed, Defendant's motion for summary judgment is pending, trial is scheduled to commence in less than three months, and Johnson waited more than two years to file this motion, in the interest of judicial economy and to avoid an unnecessary delay, this Magistrate Judge recommends that Johnson's Motion to Transfer Venue be denied.

## III. Motion for Summary Judgment

### A. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that no evidence supports the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment

11

evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and thus cannot defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.*

The party opposing summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* If the nonmoving party fails to make a showing sufficient to establish an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**B. Analysis**

Johnson brings her disability discrimination claim under Section 501 of the Rehabilitation Act, which prohibits disability discrimination against federal employees. *Pinkerton v. Spellings*, 529 F.3d 513, 517 (5th Cir. 2008). The Act states that no "otherwise qualified individual with a disability . . . shall solely by reason of his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance" 29 U.S.C. § 794(a). Because the Americans with Disabilities Act ("ADA") also was enacted to prevent discrimination against individual with disabilities and the statutes contain parallel language, "[j]urisprudence interpreting either section is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).

A plaintiff alleging disability discrimination under the Rehabilitation Act can either provide direct evidence of the discrimination or proceed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d

688, 694 (5th Cir. 2014). If the plaintiff produces direct evidence that discriminatory animus played a role in the employer's adverse employment decision, the burden of persuasion shifts to the defendant, which must prove that it would have taken the same action despite any discriminatory animus. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). If the plaintiff produces only circumstantial evidence of discrimination, under the *McDonnell Douglas* framework, the plaintiff first must establish a *prima facie* case of discrimination by showing that (1) she was a qualified individual under the ADA; (2) she was denied benefits or otherwise was discriminated against by the defendant; and (3) denial of benefits or discrimination was because of her disability. *Austin v. City of Pasadena, Texas*, 74 F.4th 312, 334 (5th Cir. 2023). Once an employee has established her prima facie case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for the adverse employment action. *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 479 (5th Cir. 2016). The employee then must present evidence that the articulated reason is pretextual. *Id.*

Johnson argues that she has established disability discrimination under both burdens of proof. The Army argues that Johnson has not met her burden of proof under either theory.

Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). If an inference is required for evidence to be probative as to an employer's discriminatory animus, the evidence is circumstantial, not direct. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019).

Johnson argues that the Disposition Letter constitutes direct evidence of discrimination because it expressly states that "the selecting office found that you are not eligible for this position

13

based on medical reasons. Therefore, you were removed from the certificate, or list, of highly qualified candidates." Dkt. 54-1 at 1.

The Army contends that the Disposition Letter is not direct evidence of discrimination. The Army asserts that the letter (1) "does not reference Johnson's VA disability rating" and "relies on an inference that the 'medical reasons' referenced in the Disposition Letter are her VA disability rating," and (2) "Johnson's application materials did not include any documents describing the medical conditions underlying her VA disability rating." Dkt. 51 at 8. As a result, the Army argues, "the Disposition Letter statement requires a reader to infer that the Disposition Letter's author had themselves inferred from Johnson's VA disability rating that suffered from some ongoing medical concerns that would impact her fitness for hiring." *Id.* The Court disagrees.

While Johnson's application did not include a description of the medical conditions underlying her VA disability rating, her application included the AB4 Civil Service Preference Letter, which certified that she was "entitled to compensation for service-related disability(ies) which are at least 30 percent or more disabling." Dkt. 54-10 at 18. The Court finds that the Disposition Letter is direct evidence of discrimination because it clearly and explicitly states that Johnson was not selected for the CMS position based on medical reasons, an improper criterion. *See Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) ("A statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action is direct evidence of discrimination.") (cleaned up); *Rodriguez v. ConAgra Grocery Prods. Co.,* 436 F.3d 468, 480 (5th Cir. 2006) (finding that employer's admission that it withdrew plaintiff's job offer because of its perception that he suffers from uncontrolled diabetes was direct evidence of disability discrimination).

Because Johnson has produced direct evidence that discriminatory animus played a role in the Army's decision not to hire her for the CMS position, the burden of persuasion shifts to the Army, which must prove that it would have taken the same action despite any discriminatory animus. *Nall*, 917 F.3d at 340. The Army contends that it did not hire Johnson because the candidate it hired was more qualified than Johnson and points to evidence in the record supporting its decision. For example, Hansen testified that:

- He did not hire Johnson because "she didn't have the experience, the breadth and depth of knowledge of the -- some of the other resume candidates." Hansen Tr. at 192:3-6, Dkt. 51-9 at 44;
- Johnson's supervisory, writing experience, and overall qualifications were not as good as the other candidates interviewed for the position. *Id.* at 182:1-15, Dkt. 51-9 at 39;
- When he reviewed Johnson's application, he only read her resume and did not read any of the attached documents, including the AB4 Civil Service Preference Letter indicating that she had a 30% VA rating. *Id.* at 164:17-25, Dkt. 51-9 at 27;
- He did not know Johnson had a 30% VA rating. *Id.* at 193:16-24, Dkt. 51-9 at 45; and
- Johnson was not selected because she was not as qualified as the candidate selected. *Id.* at 192:2-8, Dkt. 51-9 at 44.

To prevail on summary judgment, a defendant "must do more than merely identify a legitimate basis for its decision—it must show that any reasonable jury would conclude that it would have made the same decision absent the discrimination." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 477 (5th Cir. 2015). Johnson offers evidence that she was qualified for the position: she had over twenty years' experience as a contracting officer (more than the candidate selected), an advanced degree in Acquisition and Procurement Management, and significant supervisory experience. Dkts. 54-10, 54-11. The Court finds that this evidence, alongside her direct evidence that she was not considered for the position because of her medical impairments, creates a genuine issue for trial. *See Etienne*, 778 F.3d at 477 ("[Plaintiff] has offered evidence that she too was qualified, and this evidence, alongside her direct evidence that she was not even considered for the opening on account of her skin color, is surely enough to create a genuine issue for trial.").

15

## IV. Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion to Transfer Venue (Dkt. 47) and **DENY** Defendant's Motion for Summary Judgment (Dkt. 51).

## V. Order

Plaintiff's Unopposed Motion for a Continuance (Dkt. 57) is **DENIED**. This case remains set for trial commencing June 24, 2024. Dkt. 44.

## VI. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on April 1, 2024.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE